### WILLOUGHBY v. RAY *ET AL.*

#### (127 S. E., 441)

1. BILLS AND NOTES—BANK ACCEPTING OVERTIME NOTE AND MORTGAGE AS COLLATERAL SECURITY FOR LOAN HELD NOT INNOCENT PURCHASER. —Where purchaser of realty paying existing mortgage debt out of cash payment due vendor, instead of having note and mortgage marked paid, had them transferred to him and thereafter used them as collateral security for loan from bank at time when mortgage debt was overdue, bank *held* not innocent purchaser.

2. MORTGAGES—PURCHASE-MONEY MORTGAGE HELD LIEN SUPERIOR TO THAT OF PRIOR MORTGAGE WHICH PURCHASER HAD TRANSFERRED TO HIM AND PLEDGED AS COLLATERAL FOR LOAN.—Where purchaser of realty, after giving purchase-money mortgage for part of price, used part of cash payment to pay existing mortgage, but instead of having it marked paid had it transferred to him, and thereafter delivered it to bank, as collateral security for loan at time when mortgage debt was overdue, purchase-money mortgage *held* first lien on premises and mortgage held by bank but a second lien.

---

Note: On what circumstances are sufficient to put a purchaser of negotiable paper on inquiry, see note in 29 L. R. A. (N. S.), 351; 44 L. R. A. (N. S.), 395; L. R. A., 1918F, 1148.

3. MORTGAGES—MORTGAGE PAID BY PURCHASER AND THEN PLEDGED BY HIM AS COLLATERAL FOR LOAN HELD LIEN ON PROPERTY AS AGAINST PURCHASER.—Where purchaser of realty used part of cash payment in satisfaction of mortgage on property, but instead of having mortgage marked paid, had it transferred to him and pledged it with bank as collateral for loan, mortgage so pledged, though paid as to vendor, was valid lien as against purchaser.

4. PLEDGES—PLEDGEE OF MORTGAGE AFTER MATURITY HELD TO ACQUIRE NO GREATER RIGHTS THAN PLEDGOR HAD.—Where purchaser of realty gave purchase-money mortgage for part of price and used part of cash payment in satisfaction of prior mortgage, but, instead of having mortgage marked paid, had it transferred to him, and after its maturity pledged it with bank as collateral for loan, *held,* that under Code Civ. Proc., 1912, § 161, pledgee bank acquired no greater rights than purchaser, who, as against vendor, could not . assert such mortgage as lien superior to purchase-money mortgage.

Before SHIPP, J., Horry County, July, 1923. Affirmed.

Action by Mrs. P. A. Willoughby v. E. L. Ray & Merchants Bank of Tabor, North Carolina. From decree of plaintiff defendants appeal.

The following are the referee's report and decree on which the Court bases its decision:

## REFEREE'S REPORT

This is an action to foreclose a purchase-money mortgage given the plaintiff, P. A. Willoughby, by the defendant E. L. Ray. The defendant Farmers' & Merchants' Bank, by its answer, asks for the foreclosure of a mortgage given by the plaintiff, P. A. Willoughby, to Burroughs Bank & Trust Company, and which it now holds as security to a note of its codefendant, E. L. Ray.

Under an order of reference out of the Court of Common Pleas, I held a reference and took testimony as to the issues raised in the pleadings and submit herewith the said testimony as a part of this report.

I find that on July 16, 1920, the plaintiff, Mrs. Polly Ann Willoughby, made, executed, and delivered to the Burroughs Bank & Trust Company her certain note for the sum of $825 payable 60 days after date, securing said note

with a mortgage of even date therewith on the lands in question, making the maturity date of this note and mortgage September 14, 1920.

I find that thereafter on or about October 20, 1920, the plaintiff contracted to sell the lands described in the above mortgage to E. L. Ray, one of the defendants, for $4,500. This land trade was consummated by the delivery of a deed by Mrs. P. A. Willoughby to E. L. Ray on October 20, 1920—the arrangements for the payment of the purchase price of said lands was $1,500 in cash and $3,000 in six equal annual installments of $500 each, with interest on the credit portion of the purchase price at 8 per cent. per annum, payable annually.

It appears that in accord with the agreement to buy and sell, Mrs. Willoughby and Mr. Ray appeared at the office of Sherwood & McMillan to close their deal. The deed was drawn and executed; the notes and mortgage for the credit portion of the purchase price were prepared and executed. As to the $1,500 cash payment a part was used to pay the note and mortgage debt due by Mrs. Willoughby to Burroughs Bank & Trust Company and the balance paid to Mrs. Willoughby in cash. It appears that Mr. Ray and Mrs. Willoughby's husband went to the bank and paid this paper, and that Mr. Ray, when paying same, instead of having it marked paid, had it transferred to himself and gave Mrs. Willoughby a check for the difference between $1,500 and the sum he paid the bank.

I feel constrained to say here that Mrs. Willoughby and her husband have the appearance of being ignorant old people, and have little or no knowledge of the law and rules governing the handling of papers in a transaction like this. They both stated they thought that when they saw Mr. Ray take a part of the purchase money for this land which was due them and pay their mortgage debt, and, as Mr. Willoughby says, "take the papers up," that this was the end of it.

Mr. Willoughby testified that he went to the bank with Mr. Ray, saw him pay for the papers, and saw the bank hand the paper to him; that he heard nothing about transferring. And the testimony of Mrs. Willoughby is to the same effect; that when she was informed that her mortgage had been taken up and paid for out of her money, she thought this was the end of it.

It is clear from the testimony that Mr. Ray required a clear and unincumbered title of Mrs. Willoughby. He had the titled abstracted, deeds corrected, and required this mortgage cleared. The deed in question is a full warranty deed. Ray's expressed intention was to have everything cleared, and it appears to have been the purpose of Mrs. Willoughby to meet the requirements of her warranty. So far as Mr. Ray and Mrs. Willoughby are concerned, it is clear from the testimony that it was intended that the mortgage should cease to be a lien so far as she was concerned, and that it should merge in the title, and that from the moment of its payment at the bank with Mrs. Willoughby's money the title of Ray to the land should be clear and unincumbered except as to the purchase-money papers made by Ray to her. So far as Burroughs Bank & Trust Company is concerned, this Willoughby paper is paid. So far as Ray is concerned, it is paid, and that with Mrs. Willoughby's money. Ray knew this, for he personally saw to it and attended to it. From the testimony he was there acting for himself and the defendant bank. The defendant bank is bound by the transaction; if it is the victim of fraud, its privy, Ray, is responsible, and there is nothing to indicate that Mrs. Willoughby had any direct or indirect participation in it.

It appears from the testimony that, pursuant to an arrangement already made, but not disclosed, the defendant E. L. Ray took this mortgage and carried it to the defendant bank's office at Tabor, N. C., and there deposited it as security to a loan he had made with this bank to raise a por-

tion of the $1,500 he had paid Mrs. Willoughby, and that there is due the bank on the Ray note $723.58, with interest at 6 per cent. from December 15, 1921.

The defendant E. L. Ray admits both debts. Mrs. Willoughby insists that her note and mortgage now held by the defendant Farmers' & Merchants' Bank has been paid, and that there is nothing due on it, so far as she is concerned, and if it is a lien on the land its existence is by virtue of a reissue of the old mortgage by the defendant E. L. Ray, and that her mortgage from Ray is a first lien.

The defendant Farmers' & Merchants' Bank contends that the mortgage from Polly Willoughby to Burroughs Bank & Trust Company now in their hands as security for the payment of the E. L. Ray note, is, so far as they are concerned, a first mortgage, and that Mrs. Willoughby is estopped to contest its validity as such.

Counsel for contesting parties have filed exhaustive briefs as to the issues raised in the pleadings and under the testimony, and after due consideration of these briefs in connection with the testimony and facts, including the status of the parties, I am convinced that the plaintiff's contention should prevail. The note and mortgage she made to Burroughs Bank & Trust Company matured on September 14th, before Farmers' & Merchants' Bank came into possession of it on October 20th or 21st. The bank cannot say that it is a purchaser of this paper before maturity, or that it is protected as an innocent purchaser, for—

"Where a negotiable note is found in circulation after it is due, it carries suspicion on the face of it. The question instantly arises, why is it in circulation—why is it not paid? Here is something wrong, therefore, although it does not give the indorser notice of any specific matter of defense, such as set-off, payment, or fraudulent acquisition, yet it puts him on inquiry; he takes only such title as the indorser himself has, and subject to any defense that would be made,

if the suit were brought by the indorser. The note does not cease to be negotiable; the indorsee takes a title, and may sue, but he is so far in privity with his indorser that he takes only his title, and if the defendant could make any defense against a suit brought by such indorser, he can make it against the indorsee." 8 C. J., 476. Note.

"An assignee after maturity of a negotiable note, and chattel mortgage securing same, acquires only the rights of his assignor, and cannot claim to be an innocent purchaser for value without notice of payments theretofore made to the mortgagee or his agent." *Williams v. Weekley,* 100 S. C., 28; 84 S. E., 299.

For some reason not made clear by the testimony, unless it be that it placed too much confidence in Ray, it appears that the Farmers' & Merchants' Bank stayed behind the scene while the negotiations were going on between Mrs. Willoughby and Mr. Ray. Mr. and Mrs. Willoughby both testified that they knew nothing of the bank's connection with Mr. Ray's business, and I believe that they told the truth. It is testified and admitted that Mrs. Willoughby's note and mortgage was actually paid in full out of her money, and that after its maturity it was placed in the defendant bank by Mr. Ray who at that time held title to the land.

It appears that Mr. Ray had some authority from the bank to act for it. It appears further that for some reason this authority was not disclosed fairly as it should have been. And on account of the relationship between Mr. Ray and the bank, I am morally certain the bank was informed as to his taking title to this land, and perhaps the terms of purchase; but the suggestion of innocence on the part of the bank in taking a past-due paper under the circumstances surrounding this case is not sufficiently strong to warrant me in holding that these old people must take second place and allow the bank to enforce the lien of this mortgage as against them, when there is no question but that it was paid

in full with Mrs. Willoughby's money before it was placed in the bank after its maturity, by Mr. Ray.

I therefore find that Mrs. Willoughby's mortgage is a first lien on this property; that there is a balance due thereon of $3,000, with interest at 8 per cent. per annum payable annually from October 20, 1920, amounting to a total, principal sum and interest, of $3,588.62 to this date, and that $250 is a reasonable fee for plaintiff's attorneys.

I find that there is a balance due on defendant E. L. Ray's note due the defendant Farmers' & Merchants' Bank of $723.58 with 6 per cent. interest thereon payable annually from December 15, 1921; there being a balance due, principal sum and interest, of $774.66 as of the date of this report.

It does not appear that attorney's fees are allowable under the note of Ray to bank, but if the mortgage held by the bank is a valid lien as against Ray, in my opinion, under the terms of the mortgage, Ray should be held responsible for attorney's fee, and under the terms of the mortgage in connection with his note, I find $77.46 a reasonable attorney's fee for the defendant Farmers' & Merchants' Bank, attorney, and in my opinion Ray is bound by this mortgage held by the bank, and that it is a second lien on the lands in so far as he is concerned as between him and the bank; he certainly cannot say that it has been paid.

I therefore recommend that the plaintiff have judgment against E. L. Ray for the principal sum, interest, and attorney's fee, above set out, and that the defendant Farmers' & Merchants' Bank have judgment against the defendant E. L. Ray for the principal sum, interest, and attorney's fee above set out; that the lands described in the complaint be sold under this Court's proper decree and in accord with its custom; and that out of the proceeds of such sale, the judgment debt herein recommended for Mrs. Willoughby be first paid, including the costs hereof, and the attorney's fee for her attorney, and that the balance be applied to the

satisfaction of judgment herein recommended for the defendant Farmers' & Merchants' Bank, and if there is still a balance, that it be paid to the defendant E. L. Ray.

## DECREE

This matter comes before me on exceptions taken by the defendant's attorney to the referee's report heretofore made in this case under date of February 12, 1923.

Following a review of the testimony taken in the case, a reading of the referee's report, and argument by counsel both for the plaintiff and the defendants, it is ordered, adjudged, and decreed that the conclusions of both law and fact as found by the referee in his said report be and they are hereby confirmed and made the order of this Court for the reasons set out in said report.

As a further reason for the confirmation of the referee's findings, it may be said that if the defendant E. L. Ray, assignee of the plaintiff's original mortgage to the Burroughs Bank & Trust Company and the purchaser of the land covered by said mortgage, were in Court seeking to set up the said mortgage as a first lien against his grantor Mrs. Ray, the Court would not for a moment hear him. He would be precluded from asserting any right under the assigned mortgage because of Section 161, Code of Civil Procedure of South Carolina, 1912, which reads as follows:

"In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before, notice of the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before due."

The paper assigned to Ray by the Burroughs Bank & Trust Company was past due, was nonnegotiable being a mere chose in action, and the defendant Ray's assignee, the Farmers' & Merchants' Bank of Tabor, N. C., could acquire no greater right under the assignment from Ray than Ray

himself could have, and they, therefore, could not set up this mortgage as a first lien against the purchase money mortgage given by Ray to his grantor Willoughby the day he took the deed, and the day the Burroughs Bank & Trust Company's mortgage was transferred to Ray.

I think that the referee in equity did right in holding that Mrs. Willoughby's mortgage debt, costs, and attorney's fees, as therein set out, should be first paid out of the proceeds of the sale of the mortgaged premises, and if anything should thereafter be left, that it should go to the holders of the Burroughs Bank & Trust Company's mortgage, under the assignment made by said bank.

Let a formal order of foreclosure be prepared.

S. W. G. SHIPP, Presiding Judge.

*Mr. Cordie Page,* for appellant, cites: *When merger will be adjudged:* 57 S. C., 182; 64 S. C., 190; 74 S. C., 42; 68 S. C., 102; 19 R. C. L., 484; 19 R. C. L., 485; 19 R. C. L., 487; 19 R. C. L., 488 19 R. C. L., 489. *Mergee will not take place if opposed to intention of parties:* 84 S. C., 47. *Where one or two innocent persons must suffer the one who has enabled the third also to cause the loss must sustain it:* 16 Cyc., 773; 21 Cyc., 1170; 13 Ill. A., 236; 93 S. C., 229; 100 S. C., 452; 104 S. E., 308; 102 S. E., 328; 110 S. E., 393.

*Messrs. Sherwood & McMillan,* for respondents, cite: *Purchase or past due interest is at the peril of the Purchaser:* 8 C. J., 476; 100 S. C., 28. *Findings based on credibility of witnesses are rarely overruled or appealed:* 16 S. C., 352; 98 S. C., 8; 1 S. C., 309; 1 S. C., 421; 5 S. C., 411; 5 S. C., 415.

April 3, 1925.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action to foreclose a mortgage. The question in the case is the priority of the mortgage held by the plaintiff and the mortgage held by the defendant bank.

The issues were referred to a special referee, who found that the mortgage held by the plaintiff was first, and the bank mortgage second. This finding was sustained by the trial Judge, and the report of the special referee affirmed.

The findings of fact by the referee are so clearly and forcefully stated that there is no room for improvement, and no chance to make matters more clear. Let the report and decree be reported.

The findings of the special referee, concurred in by Judge Shipp, are affirmed for the reasons therein stated, and this appeal is dismissed.

MESSRS JUSTICES WATTS and MARION concur.

ᴵMR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN did not participate.